# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| GARY TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-03148-CV-S-LMC |
| | ) |
| TAYLOR BOLTON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. #23). For the reasons listed below, the motion is granted.

### I.  BACKGROUND

On May 14, 2024, Plaintiff Gary Taylor filed his Complaint against Taylor Bolton, Steven Hartman, and the City of Springfield, Missouri, alleging: (1) excessive force as to Defendants Bolton and Harman in violation of 42 U.S.C. § 1983; (2) failure to intervene as to Defendants Bolton and Harman in violation of 42 U.S.C. § 1983; (3) negligence as to Defendants Bolton and Harman; and (4) negligent hiring, training, supervision, and retention as to Defendant City of Springfield. On October 28, 2024, this Court granted Defendant City of Springfield, Missouri's motion to dismiss the claim against it. (Doc. #17.)

### II.  SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

256, 106 S.Ct. 2505, 2514 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. "Material facts" are those "that might affect the outcome of the suit under the governing law," and a "genuine" material fact involves evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the absence of any genuine issue of material fact. *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991). If the moving party meets its initial burden, the nonmoving party must then produce specific evidence to demonstrate genuine issues for trial. *Id.* When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but must set forth, via citation to material in the record, specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c)(1); *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). The Court may not weigh the evidence in the record, decide credibility questions or determine the truth of factual issues, but merely decides if there is evidence creating a genuine issue for trial. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011).

## III. UNDISPUTED FACTS

In his suggestions in opposition, Plaintiff provided several factual statements[1] regarding the reasons he was with John Hilt, the events prior to Defendants arriving on scene, what he observed during the event, and his actions after the event. (Doc. #25 at 3-4.) Such matters, for the most part, are irrelevant to the determination of qualified immunity which focuses on what a reasonable officer would do in the circumstances present at the time of the seizure. *See Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (finding that a court must "judge the reasonableness of [the officer's] use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (internal quotations and citation omitted)). The following facts are uncontroverted unless otherwise noted:

1. On May 18, 2021, Defendants Taylor Bolton and Steven Hartman, who at the time were both officers with the Springfield, Missouri Police Department, were conducting surveillance on an individual named John Hilt. (Doc. #1 at ¶¶ 2, 4, 13 (Exh. A); Doc. #24-3 at 57:5-16 (Exh. C)) (Defendant's Statement of Uncontroverted Material Facts (DSUMF) ## 1, 2, modified.)

2. At that time John Hilt was a person of interest in an ongoing homicide investigation. (Doc. #1 at ¶¶ 10, 11 (Exh. A); Doc. #24-3 at 21:17-22:15 (Exh. C)) (DSUMF #3.)

3. John Hilt was known to be a member of a gang, with a propensity for violence and resisting arrest, and was an escape risk. (Doc. #1 at 3, ¶12[2]; Doc. #24-2 at 35:19-37:7 (Exh. B); Doc. #24-3 at 53:5-12 (Exh. C)) (DSUMF #4, modified.)

4. John Hilt was observed by Defendants in a truck with Plaintiff Gary Taylor. (Doc. #1 at ¶15) (DSUMF #5.)

5. While conducting surveillance Defendants learned John Hilt had an active warrant for his arrest. (Doc. #1 at ¶11; Doc. #24-2 at 33:22-34:2 (Exh. B); Doc. #24-3 at 57:5-13 (Exh. C)) (DSUMF #6.)

---

[1] The Court notes that Plaintiff's statement of facts are not set forth in separately numbered paragraphs. Plaintiff is reminded that pursuant to Local Rule 56.1(b) factual statements must be set forth in separately numbered paragraphs.

[2] In their Answer, Defendants admitted this fact. (Doc. #4 at 2, ¶12.)

3

6. Prior to attempting to apprehend John Hilt, Defendants considered potential ways to make the apprehension. (Doc. #24-2 at 45:22-47:12 (Exh. B)) (DSUMF #7.)

7. Defendants believed approaching John Hilt while he was stopped at a gas station would minimize the risk of flight. (Doc. #24-2 at 45:22-46:23 (Exh. B)) (DSUMF #9, modified.)

8. Defendants were driving a silver unmarked Springfield Police Department Ford Explorer vehicle that was equipped with lights, siren, and an in-car camera system at the time of the incident. (Doc. #1 at 5, ¶26).[3]

9. When Defendants approached the truck, John Hilt was seated in the front passenger seat of the GMC truck. (Doc. #1 at 5, ¶27.)[4]

10. Mr. Taylor had just gotten back into his vehicle when he observed the police pull up, at which point he shut the ignition off and pulled the key out of the ignition. (Doc. #25 at 3; Doc. 25-2 at 11:2-4 (Exh. 2.))[5]

11. Upon seeing Defendants, John Hilt pointed a gun at the officers through the passenger window of the truck. (Doc. #24-2 at 42:24-43:9 (Exh. B); Exh. E (Dash Cam Video)) (DSUMF #10.)

12. Officers fired at John Hilt. (Exh. E (Dash Cam Video)) (DSUMF #12.)

13. At some point, Plaintiff was struck by a bullet.[6] (Doc. #24-4 at 10:15-11:15; 13:20-22 (Exh. D) (DSUMF #13.)

## IV. CONCLUSIONS OF LAW

Defendants Bolton and Harman seek summary judgment on the grounds that (1) there is no genuine issue of material fact in dispute; (2) the officers are entitled to qualified immunity on the claims brought under 42 U.S.C. § 1983; and (3) the officers are entitled to official immunity on the negligence claim. (Doc. ## 23, 24.)

---

[3] In their Answer, Defendants admitted this fact. (Doc. #4 at 3, ¶26.)
[4] In their Answer, Defendants admitted this fact. (Doc. #4 at 3, ¶27.)
[5] Defendants have not controverted this factual statement, and the statement is supported by the record.
[6] There is a question of fact as to whether Plaintiff was struck by a bullet fired from the officer's gun or John Hilt's gun. As explained *infra*, such question is immaterial to the determination of qualified immunity.

4

A. Qualified Immunity

Qualified immunity protects government officials in their performance of discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6, 134 S. Ct. 3, 5 (2013) (internal quotations and citations omitted). The protection affords immunity from suit which is "'effectively lost if a case is erroneously permitted to go to trial.'" *Bradley v. Arkansas Dep't of Educ.*, 301 F.3d 952, 955 (8th Cir. 2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985)). Courts resolving claims of qualified immunity must determine: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right[,]"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). "The defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012). Courts are free to resolve the two requirements in the order they see proper for the matter they are deciding. *Pearson*, 555 U.S. at 236.

A clearly established right is a right that is sufficiently clear so "'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) (internal citations omitted)). "The contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). In other words, to be clearly established "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 590 (2018).

Plaintiff's complaint assumes a seizure as he has brought his constitutional claims under the Fourth Amendment. (Doc. #1 at 6-9.) The parties do not address the matter of seizure; however, such a determination is a prerequisite for determining whether there was a Fourth Amendment violation. *Whitworth v. Kling*, 90 F.4th 1215, 1217 (8th Cir. 2024). A seizure occurs where an individual's liberty is intentionally restrained by "physical force or show of authority[.]" *Id.* Furthermore, an individual must submit to a show of authority by police officers in order for there to be a seizure. *Schulz v. Long*, 44 F.3d 643, 647 (8th Cir. 1995). "A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 1381, (1989). In matters involving a traffic stop, the inquiry is thus "whether a reasonable person in [Plaintiff's] position when the car stopped would have believed himself free to 'terminate the encounter' between the police and himself." *Brendlin v. California*, 551 U.S. 249, 256-57, 127 S. Ct. 2400, 2406 (2007) (citing *Fla. v. Bostick*, 501 U.S. 429, 436, 111 S. Ct. 2382, 2387 (1991)). While not included in either party's statement of facts, the video evidence clearly shows that Defendants approached Plaintiff's truck with emergency lights on and stopped just short of the truck at an angle. (Doc. #24-5 (Exh. E- Dash Camera Video from Defendants' police vehicle on May 19, 2021)); (Doc. #24-3 at 74:13-75L:1 (Exh. C.)) Furthermore, as discussed in Undisputed Fact (UF) #10, *supra*, Plaintiff submitted to the officer's show of authority by shutting off the

6

ignition and pulling the key out of the ignition. Therefore, the Court finds that Plaintiff was seized under the Fourth Amendment.

"In assessing a claim of excessive force, courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 466, 141 S. Ct. 2239, 2241 (2021) (internal quotations and citations omitted). This standard should not be applied mechanically, but in the context of the "facts and circumstances" of the particular case. *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473 (2015). Factors to consider include, but are not exclusive, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). Courts may also look at "the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force[.]" *Kingsley*, 576 U.S. at 397. The "inquiry into the reasonableness of police force requires analyzing the totality of the circumstances." *Barnes v. Felix*, 605 U.S. 73, 80, 145 S. Ct. 1353, 1358 (2025) (internal quotes and citation omitted).

In this instance, the Court cannot state that the Defendants' use of force was unreasonable. Defendants were attempting to apprehend a known violent individual who was an escape risk. (UF #3.) Defendants also understood John Hilt to be a person of interest in an ongoing homicide investigation. (UF #2.) Knowing the flight risk involved with John Hilt, officers determined that approaching him at a gas station, in the manner in which they did, would minimize the risk of flight. (UF #7.) As noted above, officers had their emergency lights on as they approached the vehicle. As soon as officers pulled up, John Hilt pointed a gun at the officers through the passenger window. (UF #11.) At that point, it was reasonable for the Defendants to believe John Hilt posed

a danger to them or to individuals nearby. It was, therefore, reasonable for the officers to fire at John Hilt. *See Smith v. Kilgore*, 926 F.3d 479, 486 (8th Cir. 2019) (holding that an "officer's use of deadly force is objectively reasonable against armed suspects who point their gun toward officers.")

The fact that Plaintiff was hit by the gunfire does not change the analysis. There is no indication that officers intentionally shot Plaintiff. *Cf. Moore v. Indehar*, 514 F.3d 756, 761-62 (8th Cir. 2008) (finding that the officer was not entitled to qualified immunity where there were questions of fact regarding whether the officer intended to shoot a fleeing unarmed individual who was one of a group of individuals, one of which had fired a weapon at a car whose occupants had just fired several shots in the direction of the group.) "[T]he Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct." *Gardner v. Bd. of Police Comm'rs, for Kansas City, Mo.*, 641 F.3d 947, 951 (8th Cir. 2011) (internal quotations and citation omitted). The Court recognizes that the injury to Plaintiff was significant, however, the Defendants' use of deadly force was reasonable under the circumstances.

In an attempt to defeat qualified immunity, Plaintiff points to two cases in support of his argument that qualified immunity should not be applied in this matter. The only Eighth Circuit case is *Banks v. Hawkins*, 999 F.3d 521 (8th Cir. 2021). There, the court found "no reasonable officer would have believed he had probable cause to use deadly force" where the "facts suggest that [the Officer] shot [Plaintiff] despite perceiving no immediate danger of death or serious bodily injury to himself or to anyone else." *Banks*, 999 F.3d at 527-28. The Court also found that "a reasonable officer had fair warning in February 2017 that he may not use deadly force against a suspect who did not present an imminent threat of death or serious injury, even if the officer felt attacked earlier and even if he believed the suspect had previously posed a threat." *Id.* at 529. As

8

Case 6:24-cv-03148-LMC    Document 28    Filed 10/16/25    Page 8 of 11

stated earlier, the Defendants in this matter *were* faced with the immediate threat of harm to themselves and others when officers fired their weapon. Therefore, *Banks* is inapposite.

The other case cited by Plaintiff is an Eleventh Circuit case that found the officers were entitled to qualified immunity. In *Corbitt v. Vickers*, 929 F.3d 1304 (11th Cir. 2019), officers were attempting to apprehend a criminal suspect when the suspect entered onto property where an adult and six minor children were outside in the yard. *Corbitt v. Vickers*, 929 F.3d at 1308. Officers entered the property and demanded everyone get down on the ground. *Id.* Then

> while the children were lying on the ground obeying [the officer's] orders ... without necessity or any immediate threat or cause, [the officer] discharged his firearm at the family pet named 'Bruce' twice." The first shot missed, and Bruce (a dog) temporarily retreated under [the property owner's home. No other efforts were made to restrain or subdue the dog, and no one appeared threatened by him. Eight or ten seconds after [the officer] fired the first shot, the dog reappeared and was "approaching his owners," when [the officer] fired a second shot at the dog. This shot also missed the dog, but the bullet struck SDC [(a child)] in the back of his right knee. At the time of the shot, SDC was "readily viewable" and resting "approximately eighteen inches from ... [the officer], lying on the ground, face down, pursuant to the orders of [the officer]." [The fleeing suspect] "was visibly unarmed and readily compliant" with officers. According to the complaint, "[a]t no time did SDC, or any other children ... present any threat or danger to provoke ... [the officer] to fire two shots." Importantly, the parties do not dispute that [the officer] intended to shoot the dog and not SDC.

*Id.* at 1308. The court found that SDC was seized at the time the shots were fired and then went on to hold that the officer's "action of intentionally firing at the dog and unintentionally shooting SDC did not violate any clearly established Fourth Amendment rights." *Id.* at 1313, 1315. Similarly, in the case at hand, the officers intentionally fired at John Hilt and unintentionally shot Plaintiff. *Corbitt*, thus, offers no support to Plaintiff's argument.

Therefore, the Defendants actions were reasonable, and Plaintiff's constitutional rights were not violated. Finding no constitutional violation, the Defendants are entitled to qualified immunity.

9

B. Official Immunity

Plaintiff's negligence claim is based on Defendants' violating "Plaintiff's Fourth Amendment right to be free from the use of excessive force" thereby breaching "the duty they owed to Plaintiff to not infringe upon his constitutional rights." (Doc. #1 at 9-10.) Defendants argue they are entitled to official immunity on this claim.

In Missouri, a public employee is protected "from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts[,]" through the doctrine of official immunity. *Johnson v. Schurman*, 145 F.4th 897, at 905 (8th Cir. July 29, 2025). "The purpose of this doctrine is to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (internal quotations and citations omitted). "Official immunity does not apply, and a public official may be held personally liable for the damages the official caused, in two narrow exceptions: (1) when a public official fails to perform a ministerial duty required of the official by law, or (2) when a public official acts in bad faith or with malice." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024). Missouri courts define ministerial duties as:

> typically clerical in character and such that they compel a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. A duty is ministerial when a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to the public official's judgment or opinion concerning the propriety or impropriety of the act to be performed. The central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task—by definition—is not ministerial.

*Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 886 (8th Cir. 2025) (quoting *Alsup*, 588 S.W.3d at 191). A pleading fails to state a claim for relief where it fails to establish an

exception to official immunity applies. *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471 (Mo. 2023).

Plaintiff has not addressed Defendants' assertion of official immunity. A "failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). It is not the Court's responsibility to "to sift through the record to see if, perhaps, there was an issue of fact." *Id.* Furthermore, Plaintiff's Complaint fails to allege a failure to perform a ministerial duty or that officers acted in bad faith or with malice. Therefore, Defendants are entitled to summary judgment on the negligence claim.

## V. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. #23) is GRANTED.

*/s/ Lajuana M. Counts*
LAJUANA M. COUNTS
UNITED STATES MAGISTRATE JUDGE